UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:12-CR-00146-01, 06, 07, 08, 09, 10 |
| VERSUS | JUDGE FOOTE |
| ALEXANDER DERRICK REECE (01) | MAGISTRATE JUDGE HANNA |
| DREW T. GREEN (02) | |
| THOMAS WILLIAM MALONE, JR. (03) | |
| BOYD ANTHONY BARROW (04) | |
| JOSHUA ESPINOZA (05) | |
| CURIOUS GOODS LLC (06) | |
| RICHARD JOSEPH BUSWELL (07) | |
| DANIEL JAMES STANFORD (08) | |
| DANIEL PAUL FRANCIS (09) | |
| BARRY L. DOMINGUE (10) | |

**REPORT  AND  RECOMMENDATION**
**ON  MOTIONS  TO  DISMISS**

**(Rec. Docs. 238, 273, 314, 315)**

Before the court on referral from the district court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Cr. P. 59(b)(1) are the following motions:

•  defendant Stanford's (08) motion to dismiss the superceding indictment (Rec. Doc. 238), which was adopted by defendants Reece (01) (Rec. Doc. 242, 258), Curious Goods (06) (Rec. Doc. 320, 332), Buswell (07) (Rec. Doc. 240, 264), Francis (09) (Rec. Doc. 244, 266), and Domingue (10) (Rec. Doc. 305, 332);

- defendant Domingue's (10) motion to dismiss the superceding indictment (Rec. Doc. 273), which was adopted by defendants Stanford (08) (Rec. Doc. 349, 353), Curious Goods (06) (Rec. Doc. 320, 332), Francis (09) (Rec. Doc. 388, 401) and Buswell (07) (Rec. Doc. 282, 328);

- defendant Domingue's (10) motion to dismiss the superceding indictment (Rec. Doc. 314), which was adopted by defendants Reece (01) (Rec. Doc. 316, 332), Curious Goods (06) (Rec. Doc. 320, 332), Buswell (07) (Rec. Doc. 318, 332), Francis (09) (Rec. Doc. 388, 401) and Stanford (08) (Rec. Doc. 350, 353); and

- defendant Reece's (01) motion to dismiss Counts I and III of the superceding indictment (Rec. Doc. 315), which was adopted by defendants Curious Goods (06) (Rec. Doc. 320, 332), Buswell (07) (Rec. Doc. 319, 332), Stanford (08) (Rec. Doc. 351, 353), Francis (09) (Rec. Doc. 388, 401) and Domingue (10) (Rec. Doc. 367, 379).

Three of these motions (Rec. Docs. 238, 314, and 315) seek relief on the basis that the statute at issue is unconstitutionally vague as applied. The fourth motion (Rec. Doc. 273) seeks dismissal of the superseding indictment on the basis that no crime is charged in the indictment because the alleged synthetic cannabinoid, AM-2201, is neither a controlled substance nor a controlled substance analogue. The

argument made in support of that contention is also made in support of the vagueness challenges.  Therefore, the four motions will be considered together.

All of these motions are opposed by the government.  (Rec. Doc. 407, 409, 441).  Oral argument was held by the undersigned on April 26 and May 2, 2013.

Considering the evidence, the briefs, the arguments of counsel, and the applicable law, and for the reasons recited on the record together with the reasons explained below, it is recommended that these motions be DENIED.

## FACTUAL BACKGROUND

The superceding indictment (Rec. Doc. 58)[1] charges the defendants with sixteen substantive counts and also contains a forfeiture allegation.  Fourteen counts (Counts 3-16) include one count for money laundering conspiracy under 18 U.S.C. §1956(h)  and thirteen counts of money laundering in violation of 18 U.S.C. §1957. One count (Count 2) is for conspiracy to introduce and cause to be introduced misbranded drugs into interstate commerce under 18 U.S.C. §371, and one count (Count 1) is for conspiracy to distribute and possess with the intent to distribute a schedule I controlled substance under 21 U.S.C. §846.

---

[1]    Although a motion was filed seeking to revise the language used in the superseding indictment, all references to the indictment in this ruling are to the superseding indictment filed into the record on September 4, 2012 with signatures (Rec. Doc. 58).

The indictment alleges that, as of March 2011, the synthetic cannabinoid JWH-018 was a schedule I controlled substance. The other synthetic cannabinoids identified in the indictment are allegedly analogues of JWH-018 and include AM-2201, JWH-081, JWH-250, and UR-144.[2] After JWH-018 was added to schedule I, bulk quantities of synthetic cannabinoids were allegedly supplied by defendant Reece to a business known as NeutraGenomics which was owned and operated by defendants Green and Malone. NeutraGenomics supplied synthetic cannabinoids to Pinnacle Products Group, which was controlled by defendants Barrow and Espinoza, to be infused into a product called Mr. Miyagi. Pinnacle manufactured Mr. Miyagi and acted as the exclusive supplier of Mr. Miyagi to Curious Goods. Curious Goods, which was controlled by defendant Buswell, sold Mr. Miyagi to the public who would ingest it, typically by smoking it, in order to achieve a high. Mr. Miyagi contained the synthetic cannabinoid AM-2201. Defendants Stanford and Domingue allegedly received funds in excess of $245,000 from Pinnacle and Curious Goods derived from the sale of Mr. Miyagi.

In count one, the defendants are charged under 21 U.S.C. §846 with conspiracy to violate 21 U.S.C. §841(a)(1), which prohibits the knowing or intentional

---

[2]    By separate report and recommendation, the undersigned recommended, without opposition from the government, that JWH-081, JWH-250, and UR-144 be stricken from the indictment. (Rec. Doc. 486) Therefore, discussion will center on AM-2201.

manufacture, distribution, or dispensing of a controlled substance as well as the possession with intent to manufacture, distribute, or dispense a controlled substance. Through the application of 21 U.S.C. §813, commonly called the analogue statute, the prohibitions of §841(a)(1) are extended to the analogues of controlled substances listed in Schedule I of the Controlled Substances Act. (21 U.S.C. §801 *et seq.*) It is alleged that JWH-018 became a Schedule I controlled substance as of March 2011 and AM-2201 is alleged to be a controlled substance analogue, as defined in 21 U.S.C. §802(32)(A), of JWH-018.

The indictment alleges that a controlled substance analogue resembles a controlled substance in chemical structure and actual or intended physiological effect, paraphrasing the language from the definition found at 21 U.S.C. §802(32)(A). The indictment also alleges that "a controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purpose[s] of any federal law, as a controlled substance in Schedule I" tracking the language of 21 U.S.C. §813.

Count two of the indictment alleges that the defendants conspired to introduce misbranded drugs into interstate commerce by packaging Mr. Miyagi in a manner that violated the Federal Food, Drug and Cosmetic Act. (21 U.S.C. §321 *et seq.*) Count two also alleges that defendants Stanford and Francis, who had formed an entity known as the Retail Compliance Association (RCA), trained, advised, and instructed

franchise owners of defendant Curious Goods LLC and their employees on how to store, display, and sell Mr. Miyagi products, how to detect and evade law enforcement, and how to respond to their customers' questions about Mr. Miyagi. The franchise owners were allegedly required to join the RCA and pay dues which were determined by the sales volume of each store.

Count three alleges that these co-conspirators, along with defendant Domingue, conducted financial transactions using proceeds from the sale of Mr. Miyagi, in violation of 18 U.S.C. §1956(h). Counts four through sixteen allege various instances of money laundering by defendants Barrow, Espinoza, Stanford, Buswell, and Domingue in violation of 18 U.S.C. §1957.

In the instant motions, the defendants seek to have all, or at least counts one and three of the indictment dismissed, arguing that the analogue statute is unconstitutionally vague as applied and that AM-2201, the synthetic cannabinoid allegedly used in manufacturing Mr. Miyagi, was not an analogue of a Schedule I controlled substance at any relevant time.

<u>**ANALYSIS**</u>

**A.**    <u>**THE STANDARD FOR ANALYZING A MOTION TO DISMISS AN INDICTMENT**</u>

Rule 12(b)(2) and Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure supply the procedural means for a criminal defendant to challenge the sufficiency of an indictment.  Under Rule 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."

To be constitutionally sufficient, an indictment must enumerate each element of the charged offense, fairly inform the defendant of the charges filed against him, and provide the defendant with a double jeopardy defense against future prosecution.[3] Federal Rule of Criminal Procedure 7(c) is essentially the same.  It requires an indictment to contain a plain, concise, and definite written statement of the essential facts constituting the offense charged, and to cite the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.  These requirements ensure that the defendant has notice of the charges against him and that the grand jury found probable cause that he committed each element of the offenses.[4]  An indictment setting forth the offense in the words of the statute itself is generally sufficient to

---

[3]  *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir.1996); *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir.1994); and *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir.1991).

[4]  *United States v. Guzman–Ocampo*, 236 F.3d 233, 235 (5th Cir. 2000).

satisfy these requirements.[5]   An indictment that meets minimal constitutional standards is sufficient to warrant a trial of the charges on the merits.[6]

The appropriateness of granting a motion to dismiss an indictment by pretrial motion is largely contingent upon whether the alleged infirmity is essentially one of law or involves determinations of fact.[7]   "If a question of law is involved, then consideration of the motion is generally proper."[8]   Therefore, a district court may dismiss an indictment based on the resolution of a legal question in the presence of undisputed facts.[9]

On the other hand, an indictment that meets the constitutional requirements cannot be challenged on the basis that the allegations are not supported by adequate evidence.  With regard to factual questions, "a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of

---

[5]      *United States v. Hagmann*, 950 F.2d 175, 183 (5th Cir. 1991); *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir. 1986).

[6]      See *Costello v. United States*, 350 U.S. 359, 363 (1956).

[7]      *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005), citing *United States v. Miller*, 491 F.2d 638, 647 (5th Cir.1974).

[8]      *United States v. Flores*, 404 F.3d at 324.

[9]      *United States v. Flores*, 404 F.3d at 325.

the ultimate finder of fact."[10]  Consistently,"[a]s a motion to dismiss an indictment for failure to state a claim is a challenge to the sufficiency of the indictment, we are required to take the allegations of the indictment as true and to determine whether an offense has been stated."[11]  Thus,"[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for a trial of the charge on the merits."[12]  This court lacks authority under Fed.R.Cr.P. 12 to dismiss an indictment on the basis of a "sufficiency-of-the-evidence defense, which raises factual questions embraced in the general issue."[13]

When a defendant challenges an indictment on the basis that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated.[14]  The question is not whether the allegations set forth in the indictment are in fact true but whether the indictment

---

[10]    *United States v. Flores*, 404 F.3d at 324, n. 6.

[11]    *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

[12]    *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975).

[13]    *United States v. Mann*, 517 F.2d at 268.

[14]    *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999); *United States v. Kay*, 359 F.3d at 742.

sufficiently charges an offense.[15]   This is so because the basic purpose of an indictment is to fairly inform the defendant of the charges against him.[16]   Quite simply, "the government is not required to prove its case in the indictment."[17]   An indictment need not set forth every evidentiary detail necessary to establish the elements of the offense since, at this early stage of a criminal proceeding, the government is not required to set forth in detail all of the factual evidence by which it plans to establish a defendant's guilt at trial.[18]   As the Fifth Circuit has explained, "[t]he test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."[19]

Applying this standard to the motions now before the court, the undersigned finds that the defendants' motions present an issue that can be resolved at this time and an issue that cannot be decided now.    Whether a criminal statute is

---

[15]    *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).

[16]    *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.1986).

[17]    *United States v. Alfortish*, No. 10-328, 2011 WL 2293136, at *2 (E.D. La. June 8, 2011).

[18]    *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir.1986); *United States v. Cauble*, 706 F.2d 1322, 1334 (5th Cir. 1983).

[19]    *United States v. Webb*, 747 F.2d 278, 284 (5th Cir.1984).

unconstitutionally vague is a question of law.[20]  Therefore, the defendants' vagueness challenge to the analogue statute can be decided before trial.  Whether a particular substance is a "controlled substance analogue" is not a preliminary factual finding necessary to decide a relevant question of law presented by a pretrial motion.  It is, instead, a critical factual issue that must be left to the jury at trial on the merits.[21]

_____

[20]      *United States v. Rudzavice*, 586 F.3d 310, 315 (5th Cir. 2009), citing *United States v. Monroe*, 178 F.3d 304, 308 (5th Cir. 1999).

[21]      *United States v. Bamberg*, 478 F.3d 934, 939 (8th Cir. 2007) ("the jury was required to find. . . [that] 1,4 BD is a controlled substance analogue. . . ."); *United States v. Brown*, 415 F.3d 1257, 1264 (11th Cir. 2005) ("In its role as factfinder, the district court concluded that the government had proven beyond a reasonable doubt that the chemical structure of 1,4-butanediol is substantially similar to that of GHB and, accordingly, 1,4-butanediol is a controlled substance analogue of GHB. . . .  On that basis, the court found the Browns guilty of conspiracy to distribute a controlled substance analogue for human consumption.")*; United States v. Klecker*, 348 F.3d 69, 72 (4th Cir. 2003) ("Whether a particular substance qualifies as a controlled substance analogue is a question of fact."); *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002) ("The district court here found that GBL was a controlled substance analogue of GHB.  This factual finding is reviewed for clear error."); *United States v. Sullivan*, No. 4:11CR3034, 2011 WL 3957425, at *2, 3 (D.Neb. Aug. 17, 2011) ("Whether the chemical structures of these substances are 'substantially similar to the chemical structure' of a schedule I or II controlled substance is an issue of fact to be resolved at trial.  Similarly, a jury must decide whether [the substances] have, or were represented by the defendant to have, a stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to or greater than a schedule I or II controlled substance.  Finally, based on the evidence at trial, the jury must decide if Sullivan intended to sell bath salts as drugs for human consumption. . . .  The claims for dismissal raised by the defendant present issues of fact.  The defendant's motion to dismiss should be denied."); *United States v. Lusk*, No. A05-052CRJWSJDR, 2005 WL 2704988, *1 at n.1 (D. Alaska Oct. 5, 2005) ("whether the chemical. . . was in fact a controlled substance analogue. . . raises a factual issue for the fact finder at trial."); *United States v. Niemoeller*, No. IP 02-09-CR-1 H/F, 2003 WL 1563863, at *5 (S.D. Ind. Jan. 24, 2003) ("The government will still be required to prove the elements here [including whether 1,4-butanediol is an analogue of GHB] beyond a reasonable doubt, if it can."); *United States v. Forbes*, 806 F.Supp. 232, 238 (D. Colo. 1992) ("Of course, whether AET is a controlled substance analogue would ultimately be a question for the trier of fact.").

Therefore, the court cannot determine, at this stage of the litigation, whether AM-2201 is a "controlled substance analogue."

As a preliminary matter, the undersigned recognizes that, in a case from the Eastern District of Kentucky, in which the defendant was charged, as in this case, with conspiring to violate 21 U.S.C. §846 by distributing AM-2201, an alleged analogue of JWH-018, the court found that the indictment sufficiently tracked the statutory language, referencing the analogue statute and the statutory definition of "controlled substance analogue," and provided the defendant "with sufficient notice of the charges against him."[22]  The motion to dismiss the indictment was denied.  This Court similarly finds that the indictment sufficiently tracks the statutory language referencing both the analogue statue and the definition of controlled substance analogue, and provides the defendants in this case with sufficient notice of the charges against them to withstand constitutional scrutiny. Therfore, the undersigned recommends that the pending motions be denied.  Nevertheless, the defendants' arguments concerning the alleged vagueness of the analogue statute will be analyzed below.

_____

[22]     *United States v. Johnston*, No. 5:12-CR-102-9-JMH, 2013 WL 1276010, at *1 (E.D. Ky Mar. 27, 2013).

## B.   THE ANALOGUE STATUTE IS NOT UNCONSTITUTIONALLY VAGUE FOR FAILURE TO NOTIFY THE PUBLIC OF PROHIBITED CONDUCT

The defendants contend that the analogue statute is void for vagueness as applied in this case because it does not provide persons of ordinary intelligence with fair notice that an unlisted substance – AM-2201 – is to be treated as a controlled substance, therefore giving the government standardless and arbitrary enforcement powers.

"[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[23] Except in First Amendment cases, the void for vagueness standard is applied in the context of the specific facts of the case.[24] Therefore, in this case, the relevant inquiry is whether the analogue statute is unconstitutionally vague as applied to AM-2201.

The Fifth Circuit has previously reviewed vagueness arguments presented with regard to the analogue statute on two occasions. Both times, it found that the act was

---

[23]    *United States v. Daniels*, 247 F.3d 598, 600 (5th Cir. 2001), quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

[24]    *United States v. Daniels*, 247 F.3d at 600, citing *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir.1999). See, also, *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

not unconstitutionally vague.[25]   The Fifth Circuit has found that the statutory definition of the term "controlled substance analogue" is clear, specific, and readily comprehensible to the ordinary reader.[26]   The court also found that the analogue statute "provides adequate notice of what conduct is prohibited."[27]   The court unambiguously concluded "[t]here is nothing vague about the statute."[28]

A review of the jurisprudence reveals that, although the analogue statute has been challenged on the basis of vagueness on numerous occasions, no appellate circuit has held that the statute is unconstitutionally vague as applied to any substance.  Six circuits – including the Fifth Circuit – have held that the analogue statute is not unconstitutionally vague as applied to various substances.[29]   The only

---

[25]      *United States v. Desurra*, 865 F.2d 651, 653 (5th Cir. 1989); *United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir. 1990).

[26]      *United States v. Granberry*, 916 F.2d at 1010.

[27]      *United States v. Granberry*, 916 F.2d at 1010.

[28]      *United States v. Granberry*, 916 F.2d at 1010.

[29]      *United States v. Berger*, 553 F.3d 1107, 1110 (8th Cir. 2009) (1, 4-butanediol, a GHB analogue); *United States v. Bamberg*, 478 F.3d at 937 (same); *United States v. Ansaldi*, 372 F.3d 118, 122 (2nd Cir. 2004) (GBL, another analogue of GHB); *United States v. Roberts*, 363 F.3d 118, 125-26 (2nd Cir. 2004) (1, 4-butanediol); *United States v. Fisher*, 289 F.3d at 1339 (GBL); *United States v. Carlson*, 87 F.3d 440, 443-44 (11th Cir. 1996) (MDMA); *United States v. Hofstatter*, 8 F.3d 316, 3321-22 (6th Cir. 1993) (methylcathinone, an analogue of methamphetamine); *United States v. Granberry*, 916 F.2d at 1010 (N-hydroxy-3,4-methylenedioxyamphetamine, an analogue of 3,4-methylenedioxyamphetamine); *United States v. Desurra*, 865 F.2d at 653 (MDMA).

reported decision holding the statute to be unconstitutionally vague[30] is from a district court in the state of Colorado that is not binding on this Court and did not address a synthetic cannibinoid substance.

Despite the consistency in the jurisprudence, the defendants contend that the analogue statute is unconstitutionally vague based on the following arguments, each of which will be analyzed in turn:

(1)    that the definition of the term "controlled substance analogue" found at 21 U.S.C. §802(32)(A) is ambiguous and must be interpreted conjunctively rather than disjunctively;

(2)    that the term "substantially similar" used in the definition of controlled substance analogue cannot itself be adequately defined;

(3)    that the omission of AM-2201 from the final order adding five synthetic cannabinoids to schedule I makes the statute vague as applied to AM-2201;

(4)    that the legislative history precludes a substance that was created before its analogue was scheduled from meeting the statutory definition of a controlled substance analogue;

---

[30]    *United States v. Forbes*, 806 F.Supp. 232, 237 (D. Colo. 1992).

(5)     that the statute's vagueness is exemplified by various persons' opinions that AM-2201 remained legal after the March 2011 order added synthetic cannabinoids to schedule I; and

(6)     that the statute was not intended to be used in conjunction with the temporary scheduling of substance.

1.     **THE STATUTORY DEFINITION OF "CONTROLLED SUBSTANCE ANALOGUE" DOES NOT RENDER THE STATUTE UNCONSTITUTIONALLY VAGUE**

The defendants' first argument is that the analogue statute is unconstitutionally vague because the definition of the term "controlled substance analogue" is structured disjunctively but must be interpreted conjunctively, rendering the statute both ambiguous and vague. This definition, set forth in 21 U.S.C. §802(32)(A), begins as follows: "Except as provided in subparagraph (C), the term 'controlled substance analogue' means a substance. . . ." This is followed by three numbered paragraphs, labeled (i), (ii), and (iii). The first paragraph ends with a semi-colon, while the second ends with a semi-colon followed by the word "or." This would ordinarily suggest that the three paragraphs are equal and that satisfaction of any one of the three paragraphs would satisfy the definition of the term "controlled substance analogue." But the inclusion of the word "which" at the beginning of Paragraph (ii)

and near the beginning of Paragraph (iii) has resulted in the statute being interpreted conjunctively rather than disjunctively.  The defendants favor a conjunctive reading.

The defendants are correct that a majority of the courts having considered this definition have found that it should be read conjunctively rather than disjunctively,[31] meaning that they require a substance to meet the requirement of Paragraph (i) and also to meet the requirements of either Paragraph (ii) or Paragraph (iii) in order to satisfy the definition.  In other words, these courts add the word "and" following the semi-colon at the conclusion of Paragraph (i).

Under a conjunctive interpretation of the definition, a substance must have a chemical structure substantially similar to that of a controlled substance and either have a physiological effect substantially similar to that of the controlled substance or be represented as having such an effect.

The Fifth Circuit has not yet expressly weighed in on which method of interpretation should be employed.  More important, the Fifth Circuit has not

---

[31]     The conjunctive reading of the statute was adopted in the following cases:  *United States v. Roberts*, 363 F.3d at 121; *United States v. Hodge*, 321 F.3d 429, 433 (3rd Cir. 2003); *United States v. Turcotte*, 405 F.3d 515, 523 (7th Cir. 2005); and *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002).  The Eleventh Circuit first declined to decide the issue, *United States v. Fisher*, 289 F.3d at 1338, then later assumed that the conjunctive reading was correct, *United States v. Brown*, 415 F.3d at 1261.

expressly adopted a disjunctive reading of the statute. In its briefing, the government assumes that a conjunctive interpretation is appropriate.[32]

The undersigned concludes that a conjunctive reading of the statute is required, based in part on the Fifth Circuit's decision in *United States v. Granberry*, 916 F.2d 1008, 1010 (5th Circuit 1990). Although the Seventh Circuit described *Granberry* as having "recited the test in the disjunctive without discussion or elaboration,"[33] and the Second Circuit agreed that *Granberry* "stat[ed] the test in the disjunctive without discussion,"[34] *Granberry* actually quoted the statutory definition in its entirety and also paraphrased the definition in a way that is consistent with a conjunctive interpretation.

*Granberry* paraphrased the definition as follows:

The statute makes plain that drugs which have been chemically designed to be similar to controlled substances, but which are not themselves listed on the controlled substance schedules, will nonetheless be considered as schedule I substances if 1) they are substantially similar chemically to drugs that are on those schedules, 2) if they produce similar effects on the central nervous system as drugs that are on those schedules, or 3) are intended or represented to produce effects similar to those produced by drugs that are on those schedules.[35]

---

[32]    Rec. Doc. 422 at 13, Rec. Doc. 441 at 17.

[33]    *United States v. Turcotte*, 405 F.3d at 522.

[34]    *United States v. Roberts*, 363 F.3d at 121.

[35]    *United States v. Granberry*, 916 F.2d at 1010.

The *Granberry* court's placement of the word "if" before its paraphrased versions of the first and second paragraphs, coupled with its omission of the word "if" before its paraphrased version of the third paragraph, suggests that the court was interpreting the statute to require compliance with the first paragraph and also with either the second or third paragraph. It is, therefore, possible to read *Granberry* as implicitly adopting a conjunctive reading of the statute, which the majority of appellate courts have found is the correct way for it to be interpreted. The government does not disagree.

More important than the way the *Granberry* court paraphrased the statute, however, is *Granberrry's* conclusion that "[t]here is nothing vague about the statute."[36] More particularly, the court stated that "the term 'controlled substance analogue' in §813 is clearly and specifically defined, in terms readily comprehensible to the ordinary reader. It provides adequate notice of what conduct is prohibited."[37]

Although no other reported cases were located in which AM-2201 or another synthetic cannabinoid was the alleged controlled substance analogue and the statute was challenged on the basis of vagueness, there are numerous other cases in which the analogue statute has been found to pass constitutional muster, including another

---

[36]    *United States v. Granberry*, 916 F.2d at 1010.

[37]    *United States v. Granberry*, 916 F.2d at 1010.

one from the Fifth Circuit in addition to *Granberry*.[38]  The undersigned has also been made aware of the ruling in *United States v. Ferdida*, No. 6:12-cf-209-Orl-37DAB (M.D. Fla. May 1, 2013), in which the court denied the defendant's motion to dismiss the criminal indictment, holding that the analogue statute is not unconstitutionally vague as applied to UR-144 and XLR-11, two synthetic cannabinoids alleged to be analogues of JWH-018.  Additionally, in the *Johnston* case cited earlier, the court found that the indictment provided the defendant with sufficient notice of the charges against him, implicitly rejecting any vagueness challenge that might have been made.

Therefore, the undersigned finds that the defendants' argument concerning the possible conjunctive versus disjunctive interpretation of the statute does not mandate a finding that the statute is unconstitutionally vague.

## 2.    THE STATUTE'S USE OF THE TERM "SUBSTANTIALLY SIMILAR" DOES NOT RENDER THE STATUTE UNCONSTITUTIONALLY VAGUE

The defendants' next argument is that, as applied to AM-2201, the analogue statute is unconstitutionally vague because the definition of the term "controlled substance analogue" set forth in 21 U.S.C. §802(32)(A) includes the words "substantially similar."  The defendants argue that "substantially similar" cannot be

---

[38]    See Footnote 26, above.

adequately defined, has no legal definition, is not a recognized scientific concept, and demands a scientific opinion before it can be applied because there is no generally accepted scientific standard for determining when one substance is "substantially similar" to another. The defendants suggest that any attempt to determine whether one substance is "substantially similar" to another will result in a battle of experts because there is a conflict in the scientific community concerning the meaning of this term. The defendants contend that this makes it impossible for an average citizen to determine if his conduct is legal under the analogue statute. The government argues, to the contrary, that there is a scientifically accepted means of comparing JWH-018 with AM-2201.

Although there are no cases directly on point, because no other court has faced this argument with regard to AM-2201, the same argument made by the defendants in this case has been made and rejected with regard to other controlled substance analogues. In *United States v. Turcotte*, 405 F.3d 515, 531 (7th Cir. 2005) the court found that "the Analogue Provision seems to us sufficiently clear by its own terms." The Eleventh Circuit also rejected the defendants' argument in *United States v. Carlson*, 87 F.3d 440, 443-44 (11th Cir. 1996). The case primarily relied upon by the defendants in support of their argument is *United States v. Forbes*, 806 F.Supp. 232, 239 (D. Colo. 1992), which held "that the definition of controlled substance analogue

as applied to AET under the unique facts here is unconstitutionally vague." However, *Forbes* is not binding precedent, and as the court recognized, is factually specific to the substances at issue in that case.

As in all cases involving statutory construction, the court's starting point must be the language used by Congress in writing the statute.  "The canons of statutory construction dictate that when construing a statute, the court should give words their ordinary meaning. . . ."[39]  Here, there is no indication that Congress intended the words "substantially similar" to have a specialized or scientific meaning.  Therefore, these words should be given their ordinary meanings.  This same argument was made in *United States v. Brown*, 279 F.Supp.2d 1238, 1240-41 (S.D. Ala. 2003), *aff'd* 163 Fed. App'x 850 (11th Cir. 2005).  Although that case is not binding, the reasoning used by the court is persuasive.  The Alabama court found that the term "substantially similar" was to be interpreted as used in everyday language, then turned to the dictionary definitions of the words "substantial" and "similar."

The Fifth Circuit has similarly interpreted the term "substantially similar" in the context of a dispute concerning two retail establishments' trade names.  In that case, *Almeda Mall, L.P. v. Shoe Show, Inc.*, 649 F.3d 389 (5th Cir. 2011), the court

---

[39]     *White v. Black*, 190 F.3d 366, 368 (5th Cir. 1999).  See, also, e.g., *United States v. Hubbard*, 480 F.3d 341, 347-48 (5th Cir. 2007).

stated that a term is not ambiguous when it can be given a definite legal meaning. The court then looked to the Random House Webster's College Dictionary, which defines the term "substantially similar" to mean "having essential elements in common." Because the term "substantially similar" can be given a definite legal meaning and can be defined as set forth in the cited dictionary, the undersigned finds that the term is not ambiguous and does not render the statutory definition of "controlled substance analogue" unconstitutionally vague.

Although expert assistance might be required to determine whether a substance is an analogue of a controlled substance, this does not render the statute vague, since

> [w]hen dealing with the distribution of organic chemical compounds for human consumption and with intended or hoped-for central nervous system effects, Congress could reasonably expect and require persons engaged in that activity to possess or obtain the specialized knowledge needed to conform their conduct to law.[40]

Perhaps more important with regard to this matter is the government's proffer, which shows that JWH-018 and AM-2201 differ only with regard to one atom, JWH-018 having a hydrogen atom where AM-2201 has a fluoride atom.[41] The government is also prepared to present testimony at trial to the effect that the two substances have similar pharmacological effects and that the defendants knew that AM-2201 was an

---

[40]    *United States v. Niemoeller*, No. 2003 WL at *4.

[41]    Rec. Doc. 441 at 10-13.

illegal substance and intended for it to be used for human consumption to create a "high" when ingested. This indicates that there is a scientific basis on which it might be possible to prove that the substances are substantially similar. Whether the government will ultimately prevail following a likely *Daubert* motion is not the issue – what matters is that the government has come forward with a method which, when assumed to be true for the purpose of these motions, provides a basis for comparing both the chemical structure and the physiological effects of the substances.

The Second Circuit rejected a similar vagueness challenge involving two allegedly analogous substances having a two atom difference on the basis that the defendants "knew or could have readily ascertained" that the chemical structure of the substances was substantially similar.[42] The undersigned finds that, applying that same standard and using the method suggested by the government in its proffer, the defendants in this case could have ascertained that JWH-018 and AM-2201 are sufficiently similar in chemical make up that the defendants were on notice that AM-2201 was illegal.

Furthermore, in the Fifth Circuit, conspiracy under 21 U.S.C. §846 includes a scienter requirement. It is a specific intent crime that requires proof that the

---

[42]     *United States v. Roberts*, 363 F.3d at 125-26.

defendant voluntarily and intentionally violated the law.[43] "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."[44] In this case, the government will be required to prove not only that JWH-018 and AM-2201 are substantially similar but also that the defendants knew that what they were doing was illegal.

For these reasons, the undersigned finds that the use of the words "substantially similar" in the statutory definition of "controlled substance analogue" does not result in the analogue statute being unconstitutionally vague.

### 3.  THE OMISSION OF AM-2201 FROM THE MARCH 2011 ORDER DOES NOT RENDER THE ANALOGUE STATUTE UNCONSTITUTIONALLY VAGUE

The defendants' next argument is that the DEA's final order of March 2011, which added five synthetic cannabinoids to the list of Schedule 1 controlled substances, and the analogue statute itself are void for vagueness as applied in this case because they do not provide persons of ordinary intelligence with fair notice that an unlisted substance – AM-2201 – is to be treated as a controlled substance, therefore giving the government standardless and arbitrary enforcement powers.

---

[43]      *United States v. Burroughs*, 876 F.2d 366, 369 (5th Cir. 1989).

[44]      *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).

In connection with this argument, the defendants do not argue that there is any deficiency in the indictment itself.  Instead, they argue that there is a deficiency in Schedule I or, more precisely, in the order under which the five synthetic cannabinoids were added to Schedule I.  The defendants argue that, by not including AM-2201 in the list of substances contained in the final order, the final order is void for vagueness and therefore cannot be enforced.  The government's counter argument is that there would be no need for an analogue statute if every proscribed substance had to be listed on a schedule.

The Controlled Substances Act, (21 U.S.C. §801 *et seq*.),  "establishes five categories or 'schedules' of controlled substances, the manufacture, possession, and distribution of which the Act regulates or prohibits.  Violations involving schedule I substances carry the most severe penalties, as these substances are believed to pose the most serious threat to public safety."[45]  Section 811(a) of the Act authorizes the Attorney General to add substances to a schedule, to remove substances from a schedule, and to move a substance from one schedule to another.  Therefore, the schedules, and particularly schedule I, which is relevant to this case, are an incorporated part of the Act.  The Act also specifically addresses controlled substance analogues, which are defined in §802(32)(A), in the analogue  statute found at §813.

---

[45]    *Touby v. United States*, 500 U.S. 160, 162 (1991).

A fundamental principle of statutory construction is that "[a] statutory provision cannot be read in isolation, but necessarily derives its meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole."[46]  Thus, schedule I, as it was revised after the final order added five synthetic cannabinoids other than AM-2201, and the Controlled Substances Act, of which schedule I is a part, cannot be read without reference to the analogue statute which states:  "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."

As the Fifth Circuit has explained, "a statute providing the basis for criminal prosecution may incorporate other provisions by reference."[47]  Here, the Controlled Substances Act and the analogue statute reference each other.  In such a situation, "a reasonable person of ordinary intelligence would consult the incorporated provisions."[48]  The Sixth Circuit has previously held that the fact that the analogue statute does not specifically list the chemicals that are controlled substance analogues

---

[46]    *Khalid v. Holder*, 655 F.3d 363, 367 (5th Cir. 2011).

[47]    *United States v. Clayton*, 506 F.3d 405, 410 (5th Cir. 2007).

[48]    *United States v. Clayton*, 506 F.3d at 410.

-27-

does not necessarily render the statute unconstitutionally vague.[49]  The Eleventh Circuit has also addressed this issue, stating that "under current law, all substances that meet the definition of a controlled substance analogue are illegal.  No list of controlled substance analogues is necessary."[50]  Although not binding, these decisions are persuasive.

Therefore, even though AM-2201 was not expressly added to schedule I when the final order was issued, a reasonable person would also consult the analogue statute and be put on notice that any analogues of the substances newly added to schedule I were to be treated as though they too were on the schedule.  Furthermore, regardless of whether any particular analogue is or is not referred to in the rule or order by which  a substance is added to schedule I, the analogue statute is clear and unambiguous.  It states, in very simple terms, that a controlled substance analogue, *to the extent it is intended for human consumption,* is treated as though it were listed on the schedule.  Therefore, with regard to any analogue of any substance on schedule I, there should be no confusion as to how the analogue is treated if it is intended for human consumption.

---

[49]     *United States v. Hofstatter*, 8 F.3d at 321.

[50]     *United States v. Fisher*, 289 F.3d at 1337.

The undersigned concludes that the final order, in connection with the Controlled Substances Act and the analogue statute, gives adequate notice to ordinary persons concerning the activities prohibited thereby. The undersigned further concludes that the analogue statute is not unconstitutionally vague because AM-2201 is not a scheduled substance.

**4.    THE LEGISLATIVE HISTORY DOES NOT RENDER THE ANALOGUE STATUTE UNCONSTITUTIONALLY VAGUE WITH REGARD TO SUBSTANCES CREATED BEFORE ANALOGOUS SUBSTANCES ARE SCHEDULED**

In the motion bearing Rec. Doc. 273, the defendants do not challenge the constitutional sufficiency of the indictment; instead, they contend that the indictment fails to charge them with a crime. In support of this contention, they argue that the legislative history of the analogue statute precludes its being applied to substances that existed before the controlled substance to which they are analogues was added to the schedule of controlled substances. In the other motions currently being considered, i.e., those bearing Rec. Docs. 238, 314, and 315, the defendants argue that the analogue statute is unconstitutionally vague for that same reason.

The defendants argue that the legislative history of the analogue statute contains statements suggesting that the purpose of the statute was to address underground chemists who tinker with the molecular structure of controlled substances to create new drugs that are not scheduled. While it is true that such

statements can be found in the legislative history, analysis of the analogue statute does not center on the legislative history but on the content of the statute itself.

As in all cases involving statutory construction, this Court's starting point must be the language used by Congress in crafting the statute and the assumption that the legislative purpose is expressed by the words used in the statutes. The United States Supreme Court has cautioned that "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material."[51] Therefore, a fundamental tenet of statutory construction is that Congress "says in a statute what it means and means in a statute what it says there."[52] In other words, "[s]tatutory language reflects the intention of Congress, and 'Congress' intention is the law and must be followed.'"[53] Thus, "when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms."[54] As the Fifth Circuit has stated, "Congress adopted and the President signed only the act itself. The reports of committees and the congressional debates did not become law. A court should depart from the official

---

[51]    *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568 (2005).

[52]    *United States v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008).

[53]    *Russell v. Choicepoint Services, Inc.*, 302 F.Supp.2d at 664, quoting *Blue Cross & Blue Shield v. Shalala*, 995 F.2d 70, 73 (5th Cir. 1993).

[54]    *United States v. Pruett*, 681 F.3d 232, 242 (5th Cir. 2012), citing *Hartford Underwriters v. Union Planters Bank*, 530 U.S. 1, 6 (2000).

text of the statute and seek extrinsic aids to its meaning only if the language is not clear or if apparent clarity of language leads to absurdity of result when applied."[55] A court is permitted to turn to the legislative history of a statute only after it has concluded that the statute is ambiguous."[56]  For statutory language to be considered ambiguous, it must have more than one accepted meaning or be susceptible to more than one reasonable interpretation.[57]

In this case, the analogue statute is short and clear.  It has only one sentence and says simply, "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."  The statute is not ambiguous; therefore, there is no basis on which to consult the legislative history.

Furthermore, there is nothing in the wording of the statute that limits or qualifies its applicability.  It unambiguously applies to all persons, regardless of whether they are chemists, and to all substances that meet the definition of "controlled substance analogue," regardless of when they were created.  The term

---

[55]     *American Trucking Associations, Inc. v. I.C.C.*, 659 F.2d 452, 459 (5th Cir. 1981) (internal citations omitted).

[56]     *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 518-19 (5th Cir. 2004); *United States v. Kay*, 359 F.3d 738, 743 (5th Cir.2004).

[57]     *Carrieri v. Jobs.com Inc.*, 393 F.3d at 519; *United States v. Kay*, 359 F.3d at 743.

"controlled substance analogue" is defined in 21 U.S.C. § 802(32)(A).  That statute does not contain a temporal component or include a requirement that the controlled substance be created before the analogue.  Neither statute mentions "designer drugs," "underground chemists," or the creation of new drugs.  Therefore, the words actually used in these two statutes provide no support for the defendants' argument.  If the defendants' argument were accepted, then additional requirements or elements would have to be written into the law that simply are not set forth in the words actually used in crafting the statute.

Although no Fifth Circuit authority has been presented, the government has pointed out two decisions – one from the Second Circuit and the other from the Eighth Circuit – in which this same argument was made with regard to substances other than those involved in this case.  Both times, the argument was rejected.  In *United States v. Roberts*, 363 F.3d 118, 126 (2nd Cir. 2004), the court said:  "With respect to the fact that 1,4-butanediol is not a 'designer drug,' it is true that Congress seems to have been first prompted to address the issue of controlled substance analogues by the perceived problem of designer drugs.  But the wording of the Act evinces a clear congressional intent not to limit its scope to such substances."

In *United States v. Washam*, 312 F.3d 926, 933 (8th Cir. 2002), the court acknowledged that one of the purposes for passing the analogue statute was to

"prohibit innovative drugs that are not yet listed as controlled substances." The Court then went on to explain: "However, Congress did not limit the Analogue Statute's application to newly designed drugs. The language of the statute shows that Congress intended to proscribe all drugs that are similar in chemical structure and effect to illegal drugs." These decisions are persuasive because they are consistent with the plain language of the statute and the familiar rules of construction used to interpret statutes.

The undersigned concludes that the analogue statute is not unconstitutionally vague because it does not limit its applicability to substances intentionally created from a controlled substance or to substances that are created after an analogous substance has been listed. The undersigned also reiterates that whether AM-2201 is or is not a controlled substance analogue is a factual issue that cannot be decided at this time and must be left to the jury at trial on the merits.

5.    **THE ANALOGUE STATUTE IS NOT UNCONSTITUTIONALLY VAGUE BECAUSE OF OPINIONS THAT AM-2201 REMAINED LEGAL AFTER SYNTHETIC CANNABINOIDS WERE ADDED TO SCHEDULE I**

The defendants argue that the analogue statue is unconstitutionally vague as applied because various persons opined, after the March 2011 final order added synthetic cannabinoids to schedule I, that AM-2201 remained legal. If this argument

-33-

is, in actuality, an argument that AM-2201 is not an analogue of any other substance on Schedule I, that is a factual issue that cannot be resolved at this time, and is an issue that must be decided by the jury at trial on the merits.  If this argument is intended to bolster the defendants' contention that it is difficult to determine whether a substance that is not on schedule I is "substantially similar" to a substance that is on the schedule, that does not mean that the Controlled Substances Act, the analogue statute, or the final order is unconstitutionally vague.  Instead, this argument again goes to the issue of the government's burden of proving, at trial, that AM-2201 is a controlled substance analogue.

Although no Fifth Circuit authority on this point has been located, the undersigned is persuaded that the Southern District of Indiana used sound reasoning when it examined this issue and said the following:

> Defendant also points out that a person may need expert advice from a chemist and/or physician or psychologist to determine whether a compound is an analogue.  The need for such additional information does not render the statute unconstitutionally vague.  When dealing with legislation on complex or technical matters – whether it concerns intricate corporate tax issues, the details of electronic securities transactions, or international trade in "dual use" technologies – Congress can expect a person who wishes to engage in the activity to acquire the necessary specialized knowledge to conform the person's conduct to law.  Similarly, when dealing with the distribution of organic chemical compounds for human consumption and with intended or hoped-for central nervous system effects, Congress could reasonably

expect and require persons engaged in that activity to possess or obtain the specialized knowledge needed to conform their conduct to law.[58]

The Indiana court found that the analogue statute was not unconstitutionally vague because technical assistance might be required in order to determine whether a substance is or is not an analogue. And, once again, such a determination requires a finding of fact that cannot be made on a pretrial motion that seeks dismissal of the indictment. At this stage of this case, the court is required to accept the factual allegations of the indictment as true.

The government also points out that some of the cited statements by persons opining that AM-2201 was not criminalized by the scheduling of other synthetic cannabinoids are attributable to defendant Stanford. Other of the cited comments reported merely that AM-2201 was not currently on a schedule, without making reference to the potential applicability of the analogue statute. The reliability and credibility of the sources of these comments is untested. Logically, however, a controversy as to whether AM-2201 was affected by the March 2011 order would put a reasonable person on notice that possessing or distributing it might be illegal. The undersigned is not persuaded that the opinions referenced by the defendants in their briefing are indicative of the analogue statute being unconstitutionally vague.

---

[58]    *United States v. Niemoeller*, 2003 WL at *4.

-35-

The undersigned is equally unpersuaded that the opinions referenced by the defendant in their briefing establish that the defendants lacked actual notice that AM-2201 was criminalized when JWH-018 was added to schedule I.  Generally, "ignorance of the law is not a defense."[59]  The United States Supreme Court has held that publication in the Federal Register is an appropriate vehicle for communicating action by federal agencies.  "Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents."[60]  Accordingly, the defendants were placed on notice that JWH-018 was illegal when notice was published in the Federal Register on March 1, 2011, and they were placed on notice that all analogues of JWH-018, to the extent they are intended for human consumption, were to be treated similarly when the analogue statute was enacted in 1986.

Additionally, although the March 1, 2011 order criminalized only five specific synthetic cannabinoids, not including AM-2201, the order discusses synthetic cannabinoids in general, indicating that the five substances subject to the order are

---

[59]     *United States v. Davis*, 690 F.3d 330, 340 (5th Cir. 2012); *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994).

[60]     *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-385 (1947).  See, also, *Lyng v. Payne*, 476 U.S. 926, 942–43 (1986).

all part of a larger family of substances known as naphthoylindoles of which AM-
2201 is a member.[61]    The order also points out that, at that time, "synthetic
cannabinoids are banned in at least 18 states in the United States and several
countries, and all five branches of the U.S. military prohibit military personnel from
possessing or using synthetic cannabinoids."[62]  This would put a person of ordinary
intellect on notice that possession or distribution of another synthetic cannabinoid or
another naphthoylindole might be illegal under the analogue statute.

Defendants Stanford, Buswell, and Domingue live in Louisiana.[63]  Defendant
Curious Goods has its corporate headquarters in Louisiana.[64]  Defendant Francis lives
in Georgia,[65] while defendant Reece lives in Florida.[66]  As of August 11, 2011,
synthetic cannabinoids were controlled in all of those states.[67]  Under Louisiana state
law in particular, a wide range of synthetic cannabinoids were controlled as of July

---

[61]    Federal Register, Vol. 76, No. 40, at p. 11075.

[62]    Federal Register, Vol. 76, No. 40, at p. 11075.

[63]    Rec. Docs. 66, 65, 68.

[64]    Rec. Doc. 64.

[65]    Rec. Doc. 67.

[66]    Rec. Doc. 59.

[67]    Rec. Doc. 451-2 at 3.

2011.[68]  The defendants must be charged with knowledge that, under the laws of the states in which they lived, legislation had been passed with regard to synthetic cannabinoids.  This too should have placed the defendants on notice that possession or distribution of AM-2201 might be illegal.

In a report issued by the DEA in September of 2011, AM-2201 is specifically listed as a synthetic cannabinoid for which drug reports to the National Forensic Laboratory Information System had been identified as early as 2010.[69]  The synthetic cannabinoid with the largest number of drug reports was JWH-018, however, the report makes it clear that regulation of synthetic cannabinoids had only begun in 2010 and was increasing.[70]  Since it was the source of most drug incidents, JWH-018 was one of the first added by the temporary order, but the data was available to be on notice that any analogue of JWH-018, to the extent it was intended for human consumption, was within the ambit of the analogue statute.

In sum, the undersigned does not conclude that the analogue statute is unconstitutionally vague because some persons opined that AM-2201 remained legal after five synthetic cannabinoids were added to schedule I in March 2011.

---

[68]   La. R.S. 40:964; Act 420 of the 2011 Louisiana Legislature.

[69]   Rec. Doc. 451-2, p. 2.

[70]   Id.

6.    THE ANALOGUE STATUTE IS NOT UNCONSTITUTIONALLY VAGUE AS
      APPLIED TO AM-2201 BECAUSE IT IS USED IN CONJUNCTION WITH THE
      TEMPORARY SCHEDULING OF SYNTHETIC CANNABINOIDS

The defendants argue that the analogue statute cannot be used in conjunction

with the temporary addition of JWH-018 to schedule I because only substances that

present an imminent hazard to the public health may be added to a schedule by

emergency order.  In support of this argument, the defendants attempt to show that

AM-2201 is not a threat to the public, that AM-2201 is not a designer drug, and that

some persons continued to believe that various substances including AM-2201

remained legal after the final order adding five synthetic cannabinoids to schedule I

was issued in March 2011.  These arguments – two of which have already been

addressed above – rest on factual disputes.

While the defendants suggest that the court should "establish preliminary facts"

(Rec. Doc. 315-1 at 1), implying that there might be undisputed facts relevant to a

legal argument that can be resolved at this time, the "facts" the defendants have

presented in this motion are not undisputed.  They are the type of facts that, if

determined by the court at this time, the court would impinge on the jury's factfinding

mission.  To the contrary, the defendants would like the court to resolve a raft of

alleged facts that remain in dispute and are critical to the ultimate issue of whether

AM-2201 is or is not a controlled substance analogue.  For example, the defendants would like to present expert evidence in an attempt to show that the synthetic cannabinoids temporarily scheduled in March 2011 did not present an imminent hazard to public health, arguing that establishing this fact would invalidate the final order scheduling JWH-018 and preclude AM-2201 from being characterized as a controlled substance analogue.  At this stage of the litigation, with a motion to dismiss the superseding indictment under consideration, the undersigned cannot resolve such factual disputes.  These factual disputes must be left to the jury at trial on the merits.

Furthermore, there is nothing in the analogue statute that precludes its applicability in connection with temporarily-scheduled substances.  Returning once again to the plain language used in the statute, there is no limitation there with regard to any type of scheduling procedure.  The words used in the statute comprise a single sentence that simply states, "A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."  There is nothing in the wording of the statute that limits or qualifies its applicability in any way – and certainly nothing that limits or qualifies its applicability depending upon the procedure used for listing a substance on schedule I.

Although couched in terms of "establishing preliminary facts," the defendants' argument actually seeks a ruling from the court that AM-2201 is not a controlled substance analogue.   But the indictment alleges that AM-2201 is a controlled substance analogue. (Rec. Doc. 58 at 4, 6, 11).  In deciding these motions to dismiss the  indictment, the undersigned must take that factual allegation as true.  Therefore, the factual issue raised here cannot be resolved at this time.  It must, instead, be reserved for the jury.

## B.  THE ANALOGUE STATUTE DOES NOT FOSTER ARBITRARY OR DISCRIMINATORY ENFORCEMENT

Having found that the analogue statute is not unconstitutionally vague for failure to notify the public of prohibited conduct, the undersigned also finds that the statute does not foster or encourage arbitrary or discriminatory enforcement.

Although the defendants' briefing center on the notice prong of the vagueness analysis, they also contend that because the final order failed to give adequate notice that AM-2201 was the analogue of a scheduled substance, the final order allowed arbitrary and discriminatory enforcement of the Controlled Substances Act.  In support of this argument, however, the defendants offer nothing more than pure conjecture.  The United States Supreme Court has explained that when a statute is

challenged on the basis that it fails to sufficiently direct law enforcement and therefore permits or encourages arbitrary or discriminatory enforcement, the challenge must do more than assert a speculative danger of arbitrary enforcement.[71] A careful review of the defendants' submissions provides no basis for concluding that the analogue statute permits or encourages selective or arbitrary enforcement.

As previously set forth, 21 U.S.C. §841(a)(1), the statute that the defendants are charged with conspiring to violate, includes an intent requirement, which adds another layer of proof to the government's burden and makes it less likely that enforcement of the law will be arbitrary or discriminatory.[72]  In rejecting a vagueness challenge to the analogue act, one court stated that "[t]he intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement."[73]  In a similar case, the court held that the statute's requirement that a substance subject to the act be "intended for human consumption" "sufficiently constrains law enforcement officials and discourages arbitrary or discriminatory application of the law."[74]

---

[71]    *Village of Hoffman Estates v. The Flipside,* 455 U.S. at 503.

[72]    *J & B Entertainment, Inc. v. City of Jackson, Miss.*, 152 F.3d 362, 368 (5th Cir. 1998), citing *Village of Hoffman Estates v. The Flipside*, 455 U.S. at 503.

[73]    *United States v. Kleckler*, 348 F.3d at 71.

[74]    *United States v. Hofstatter*, 8 F.3d at 322, see also *United States v. Carlson,* 87 F.3d 440, 444 (11th Cir. 1996) and *United States v. Roberts*, 363 F.3d at 126.

The undersigned finds this reasoning persuasive. The inclusion of a requirement that the substance be intended for human consumption together with an intent requirement in 21 U.S.C. §841(a), the corollary to the analogue statute, defeats any vagueness challenge based on the potential for arbitrary enforcement, particularly in the absence of anything other than speculation on this issue. Therefore, the undersigned concludes that the analogue statute is not unconstitutionally vague as applied to AM-2201 due to its alleged potential for arbitrary or discriminatory enforcement.

## CONCLUSION

The undersigned concludes that the Controlled Substances Act analogue provision is not unconstitutionally vague. The undersigned further concludes that the factual issue of whether AM-2201 is a controlled substance analogue cannot be resolved at this stage of the litigation. The undersigned further concludes that the superseding indictment (Rec. Doc. 58) sufficiently enumerates each element of the charged offenses, fairly informs the defendants of the charges filed against them, and provides the defendants with a double jeopardy defense against future prosecution. Thus, the undersigned concludes that the superseding indictment satisfies the constitutional requirements and recommends that the following motions be DENIED:

- defendant Stanford's (08) motion to dismiss the superceding indictment (Rec. Doc. 238), which was adopted by defendants Reece (01) (Rec. Doc. 242, 258), Curious Goods (06) (Rec. Doc. 320, 332), Buswell (07) (Rec. Doc. 240, 264), Francis (09) (Rec. Doc. 244, 266), and Domingue (10) (Rec. Doc. 305, 332);

- defendant Domingue's (10) motion to dismiss the superceding indictment (Rec. Doc. 273), which was adopted by defendants Stanford (08) (Rec. Doc. 349, 353), Curious Goods (06) (Rec. Doc. 320, 332), Francis (09) (Rec. Doc. 388, 401)and Buswell (07) (Rec. Doc. 282, 328);

- defendant Domingue's (10) motion to dismiss the superceding indictment (Rec. Doc. 314), which was adopted by defendants Reece (01) (Rec. Doc. 316, 332), Curious Goods (06) (Rec. Doc. 320, 332), Buswell (07) (Rec. Doc. 318, 332), Francis (09) (Rec. Doc. 388,401) and Stanford (08) (Rec. Doc. 350, 353); and

- defendant Reece's (01) motion to dismiss Counts I and III of the superceding indictment (Rec. Doc. 315), which was adopted by defendants Curious Goods (06) (Rec. Doc. 320, 332), Buswell (07) (Rec. Doc. 319, 332), Stanford (08) (Rec. Doc. 351, 353), Francis (09) (Rec.Doc. 388, 401) and Domingue (10) (Rec. Doc. 367, 379).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b)(2), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or on a date set by the district court, shall act to waive the party's right to review by the district court. Fed. R. Cr. P. 59(b)(2).

Signed at Lafayette, Louisiana on this 10th day of May 2013.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE