UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA

CRIMINAL NO. 6:12-CR-00146-(01)(07)(08)(10)

VERSUS

JUDGE FOOTE

ALEXANDER DERRICK REECE (01)
DREW T. GREEN (02)
THOMAS WILLIAM MALONE, JR. (03)
BOYD ANTHONY BARROW (04)
JOSHUA ESPINOZA (05)
CURIOUS GOODS LLC (06)
RICHARD JOSEPH BUSWELL (07)
DANIEL JAMES STANFORD (08)
DANIEL PAUL FRANCIS (09)
BARRY L. DOMINGUE (10)

MAGISTRATE JUDGE HANNA

**REPORT  AND  RECOMMENDATION ON MOTION TO DISMISS**
**(Rec. Doc. 297)**

Richard Buswell (07) filed a Motion to Dismiss Count Two of the

Superseding Indictment [Doc. 297], which has been adopted by Defendants Reece

(01)[Doc. 312, 332], Stanford (08)[Doc. 337, 346], Francis (09) [Doc. 388,401]

and Domingue (10)[Doc. 362, 379] The government opposes the motion. [Doc.

446]. Oral argument was held on April 26 and May 2, 2013.  Considering the

evidence, the briefs, the arguments of counsel, and the applicable law, it is

recommended that the motion be DENIED.

## Factual Background

The superceding indictment (Rec. Doc. 58)[1] charges the defendants with sixteen substantive counts and also contains a forfeiture allegation. Count Two of the Superceding Indictment charges the defendants with Conspiracy to Introduce and Cause to be Introduced Misbranded Drugs into Interstate Commerce, in violation of 18 U.S.C. §371 and the Federal Food, Drug, and Cosmetic Act [FDCA] 21 U.S.C. §321, et seq. [Doc. 58, pp. 6-8]

The indictment alleges that, as of March 2011, the synthetic cannabinoid JWH-018 was a schedule I controlled substance. The other synthetic cannabinoids identified in the indictment are allegedly analogues of JWH-018 and include AM-2201, JWH-081, JWH-250, and UR-144.[2] After JWH-018 was added to schedule I, bulk quantities of synthetic cannabinoids were allegedly supplied by defendant Reece to a business known as NeutraGenomics which was owned and operated by defendants Green and Malone. NeutraGenomics supplied synthetic cannabinoids to Pinnacle Products Group, which was controlled by defendants Barrow and

---

[1]    Although a motion was filed seeking to revise the language used in the superseding indictment, all references to the indictment in this ruling are to the superseding indictment filed into the record on September 4, 2012 with signatures (Rec. Doc. 58).

[2]    By separate report and recommendation, the undersigned recommended, without opposition from the government, that JWH-081, JWH-250, and UR-144 be stricken from the indictment. (Rec. Doc. 486) Therefore, discussion will center on AM-2201.

Espinoza, to be infused into a product called Mr. Miyagi. Pinnacle manufactured Mr. Miyagi and acted as the exclusive supplier of Mr. Miyagi to Curious Goods. Curious Goods, which was controlled by defendant Buswell, sold Mr. Miyagi to the public who would ingest it, typically by smoking it, in order to achieve a high. Mr. Miyagi contained the synthetic cannabinoid AM-2201.

In count one, the defendants are charged under 21 U.S.C. §846 with conspiracy to violate 21 U.S.C. §841(a)(1), which prohibits the knowing or intentional manufacture, distribution, or dispensing of a controlled substance as well as the possession with intent to manufacture, distribute, or dispense a controlled substance. Through the application of 21 U.S.C. §813, commonly called the analogue statute, the prohibitions of §841(a)(1) are extended to the analogues of controlled substances listed in Schedule I of the Controlled Substances Act. (21 U.S.C. §801 *et seq*.) It is alleged that JWH-018 became a Schedule I controlled substance as of March 2011 and AM-2201 is alleged to be a controlled substance analogue, as defined in 21 U.S.C. §802(32)(A), of JWH-018.

The indictment alleges that a controlled substance analogue resembles a controlled substance in chemical structure and actual or intended physiological effect, paraphrasing the language from the definition found at 21 U.S.C. §802(32)(A). The indictment also alleges that "a controlled substance analogue

shall, to the extent intended for human consumption, be treated, for the purpose[s] of any federal law, as a controlled substance in Schedule I" tracking the language of 21 U.S.C. §813.

Count two of the indictment alleges that the defendants conspired to introduce misbranded drugs into interstate commerce by packaging Mr. Miyagi in a manner that violated the Federal Food, Drug and Cosmetic Act. (21 U.S.C. §321 *et seq*.) Specifically, the label on each package of Mr. Miyagi is alleged to read as follows:

> **Directions for use**: Use contents to refresh scent in the home, drawers, closets, the car, etc. Simply open package and let out our proprietary blend of herbs and botanicals release a warm pleasant aroma that refreshes the air **Warning**: Our Potpourri is not for human consumption. Keep out of reach of children and pets. **Ingredients**: Exotic Blend of Herbs, Plants and Botanicals. As of this printing, this product complies with all U.S. federal laws. [Doc. 58, p.9]

Count two also alleges that defendants Stanford and Francis, who had formed an entity known as the Retail Compliance Association (RCA), trained, advised, and instructed franchise owners of defendant Curious Goods LLC and their employees on how to store, display, and sell Mr. Miyagi products, how to detect and evade law enforcement, and how to respond to their customers' questions about Mr. Miyagi. The franchise owners were allegedly required to join

the RCA and pay dues which were determined by the sales volume of each store.[3]

By this motion, the defendants contend that count two should be dismissed on five different bases. First, they argue that AM-2201 is not a "drug" within the meaning of the FDCA, and therefore, the misbranding statute is inapplicable. Second, they argue that the government's allegation that Mr. Miyagi was a synthetic drug hinges on the belief that Mr. Miyagi's active ingredient, allegedly AM-2201, was a synthetic version of JWH-018, which became a schedule I controlled substance by emergency ban in March, 2011. The defendants contend that because the ban was illegally implemented, AM-2201 is neither an illicit substance nor a synthetic drug.

Third, the defendants contend that the label on Mr. Miyagi which states "Warning: not for human consumption" is neither false nor misleading and the public's "off label use" of a product should not dictate what must be on the label. [Doc. 458-1 p. 4] To paraphrase, the defendants should not be held criminally responsible for the public's misuse of the product because the label instructed that Mr. Miyagi was not for human consumption.

Fourth, and raised for the first time in the reply memorandum, the

---

[3]     Although Stanford and Francis adopted this motion, there is no argument in brief by any party addressing these allegations against them.

defendants contend that if AM-2201 is considered a drug for purposes of the

FDCA, it would be a "new drug" as defined in 21 U.S.C. §321(p)(1) and if a

consumer followed the label instructions on Mr. Miyagi, i.e. not for human

consumption, and used it according to the label, it would not have any effect on

the human body, and therefore, take it out of reach of the FDCA because it would

not be considered a drug under the statute. [Doc. 458-1, pp. 7-8]

Finally, and also raised for the first time in the reply brief, the defendants

contend that, given the novel approach taken by the government in this

prosecution, the defendants should have been provided a warning letter from the

FDA.  In the absence of receiving any warning letters from the FDA, they have

been deprived of their rights of due process under the fifth amendment. [Doc. 458-

1, pp.9-11] This contention then became a constitutional vagueness challenge

raised for the first time in a reply brief.

## Analysis

### A.    THE STANDARD FOR ANALYZING A MOTION TO DISMISS AN INDICTMENT

Rule 12(b)(2) and Rule 12(b)(3)(B) of the Federal Rules of Criminal

Procedure supply the procedural means for a criminal defendant to challenge the

sufficiency of an indictment.  Under Rule 12(b), "[a] party may raise by pretrial

motion any defense, objection, or request that the court can determine without a

trial of the general issue."

To be constitutionally sufficient, an indictment must enumerate each element of the charged offense, fairly inform the defendant of the charges filed against him, and provide the defendant with a double jeopardy defense against future prosecution.[4] Fed.R.Cr.P. 7(c) requires an indictment to contain a plain, concise, and definite written statement of the essential facts constituting the offense charged, and to cite the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. These requirements ensure that the defendant has notice of the charges against him and that the grand jury found probable cause that he committed each element of the offenses.[5]

The appropriateness of granting a motion to dismiss an indictment by pretrial motion is largely contingent upon whether the alleged infirmity is essentially one of law or involves determinations of fact.[6] "If a question of law is involved, then consideration of the motion is generally proper."[7] Therefore, a district court may dismiss an indictment based on the resolution of a legal question

---

[4]      *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir.1996); *United States v. Cavalier*, 17 F.3d 90, 92 (5th Cir.1994); and *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir.1991).

[5]      *United States v. Guzman–Ocampo*, 236 F.3d 233, 235 (5th Cir. 2000).

[6]      *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005), citing *United States v. Miller*, 491 F.2d 638, 647 (5th Cir.1974).

[7]      *United States v. Flores*, 404 F.3d at 324.

in the presence of undisputed facts.[8]

With regard to factual questions, "a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact."[9]  Consistently,"[a]s a motion to dismiss an indictment for failure to state a claim is a challenge to the sufficiency of the indictment, we are required to take the allegations of the indictment as true and to determine whether an offense has been stated."[10]  Thus,"[a] defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for a trial of the charge on the merits."[11]

## B.    **Whether AM-2201 is a Drug Within the Meaning of the FDCA is a Question of Fact that Cannot be Decided With This Motion and the Indictment Contains Sufficient Allegations**

As set forth above, to be sufficient an indictment must contain the essential

---

[8]    *United States v. Flores*, 404 F.3d at 325.

[9]    *United States v. Flores*, 404 F.3d at 324, n. 6.

[10]    *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004).

[11]    *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975).

facts constituting the offense charged and cite the statute that the defendant is alleged to have violated such that the defendant is on notice of the offense charged. Under 21 U.S.C. §321(g)(1), the term "drug" is defined in relevant part to mean:

> (A) articles recognized in the official United States Pharmacopœia, official Homœopathic Pharmacopœia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and **(C) articles (other than food) intended to affect the structure or any function of the body of man or other animals**. . .[Emphasis added]

The indictment references the definitions set out at both §321(g)(1)(B) and (C), but of relevance to this motion, is that a "drug" includes articles intended to affect the structure or any function of the body of man or other animals. [Doc. 58, p. 7] The vendor's intent has been interpreted as the key element in this definition which "may be derived or inferred from labeling, promotional material, advertising, or any other relevant source."[12]

In count two of the indictment Mr. Miyagi is identified as a "synthetic drug". [Doc. 58, p.9] It is alleged that Mr. Miyagi was infused with synthetic

---

[12]    *United States v. Storage Spaces Designated Nos. "8" and "49"*, 777 F.2d 1363, 1366 (9th Cir. 1985); *National Nutritional Foods Assoc. v. Matthews,* 557 F.2d 325, 333-334 (2nd Cir 1977); see also *United States v. Undetermined Quantities of Articles of Drug,* 145 F.Supp.2d 692, 698-699 (D. Md. 2001) and cases cited therein.

cannabinoids, specifically, AM-2201, and that "purchasers of Mr. Miyagi ingest it, typically by smoking it, in order to achieve a 'high'." [Doc. 58, p. 2] The controlled substance analogue statute, also quoted in the indictment, requires that a controlled substance analogue "shall to the extent intended for human consumption," be treated as a controlled substance in Schedule I. [Doc. 58, p. 2] The object of conspiracy "was to obtain and distribute, in interstate commerce, to consumers and distributors, misbranded drugs for profit." [Doc. 58, p.9] The conspiracy charge alleges that "drugs that were misbranded" had labeling that was false and misleading, lacked the name and place of business of the manufacturer and lacked adequate directions for use in violation of 21 U.S.C. §352(a)(b) and (f). The label is then directly quoted in the overt acts section.  Finally, all of the conspirators' roles in the alleged distribution of AM-2201 and Mr. Miyagi, as set forth in section 1 of count 1, paragraphs D through H, are adopted in count two.

These are all factual allegations that must be accepted as true for purposes of this motion. Whether the government can prevail by demonstrating that AM-2201 meets the definition of drug based on the intent of the defendants, and that Mr. Miyagi was mislabeled as alleged is for the jury to decide. However, the undersigned finds that the indictment sufficiently alleges that the defendants intended use of Mr. Miyagi was for purchasers "to achieve a high" through human

consumption and this intended use brings the product within the definition of a "drug" as set forth in 21 U.S.C. §321(g)(1)(C): an article intended to be used to affect the structure or any function of the body of man.

### C.    JWH-18 was Properly Added as a Schedule I Controlled Substance

The defendants contend that AM-2201 is not a synthetic or illicit drug because JWH-018 was not properly listed as a Schedule I controlled substance in March of 2011. The undersigned has considered and rejected that argument in response to the Motion to Dismiss Superseding Indictment by Defendant Domingue [Rec. Doc. 205], adopted by Buswell and other defendants.[13]  In the Report and Recommendation issued March 25, 2013 [Doc. 280], the undersigned found that the DEA complied with the procedural requirements of 21 U.S.C. § 811(h) in adding JWH-018 to schedule I in March, 2011, and that the DEA's failure to comply with the notice requirement of 5 U.S.C. § 801(a)(1)(A) did not preclude the addition of JWH-018 to schedule I.  Therefore, JWH-018 was a controlled substance on and after March 1, 2011, and that its alleged chemical analogue, AM-2201, should also be treated as such pursuant to 21 U.S.C. §813.

---

[13]    The motion by Domingue[Doc. 205] was adopted by Defendants Reece [Doc. 210, 218], Buswell [Doc. 215, 222], Francis [Doc. 248, 269], and Stanford [Doc. 212, 220].

[Doc. 280][14] This Court has also concluded whether AM-2201 is a controlled substance analogue as defined in 21 U.S.C. §802(32)(A) is a question of fact for the jury. [Doc. 503]  On that basis, and for the same reasons, the undersigned rejects this argument.

**D.    Whether the Label on Mr. Miyagi is False and Misleading is a Question of Fact for the Jury and the Allegations are Sufficient**

The indictment alleges the FDCA prohibits causing the introduction, or delivery for introduction, into interstate commerce, misbranded drugs, and introducing, or delivering for introduction, into interstate commerce drugs; the misbranding of any drug in interstate commerce; the receipt in interstate commerce of any drug that is misbranded and the delivery for pay or otherwise; and the manufacture of any drug that is misbranded citing 21 U.S.C. §331(a).  The indictment also alleges a drug is deemed to be misbranded if its labeling is false or misleading in any particular; if in package form, unless it bore a label containing, among other things, the name, place of business of the manufacturer, packer, or distributor; or if it fails to bear adequate directions for its use citing 21 U.S.C. §352(a),(b),(f)(1).

The conspiracy count specifically alleges the defendants violated §331 in

_____

[14]     The defendants have objected to the Report and Recommendation and the matter is pending before the district court.

that one or more co-conspirators did "receive, manufacture, package, hold for sale, distribute, introduce, and cause the introduction of, in interstate commerce," misbranded drugs. The drugs were misbranded because their labeling was false and misleading, lacked the name and place of business of the manufacturer, and lacked adequate directions for use.[15]  In Part IV of count two, the label on a package of Mr. Miyagi is quoted. It does not contain the name and place of business of the manufacturer. The factual allegations adopted from count I include the allegations that Mr. Miyagi was infused with AM-2201, was intended for human consumption and that purchasers ingested it by smoking it to get high. Assuming these allegations to be true, as the court must at this stage, the label is false and misleading and has no instructions for that type of use. These allegations are sufficient to place the defendants on notice, both from a factual and statutory standpoint, what they are accused of doing that violated the law.

In the face of allegations that the defendants intended that Mr. Miyagi be used for human consumption, for purposes of smoking it to achieve a high, the fact that the label says that it is not so intended is of no moment. "Self serving labels

---

[15]    This Court has generated a Report and Recommendation concerning a Motion to Dismiss Count Two as Duplicitous in which it was recommended the government's motion to amend the indictment to substitute "and" for "or" at the bottom of page 8 of the indictment be granted. [Doc. 500]

cannot be allowed to mask the vendor's true intent as indicated by the overall circumstances."[16]

In the *Storage Spaces* case, products that were intended as cocaine substitutes were labeled as "incense" and "not for drug use". The court found that if the items were intended for use as a drug, §352(f)(1) required the label contain adequate direction for use as drugs. Similarly, the court found that if the products were labeled as "incense" when they were, in fact, intended for drug use, there was a "reasonable basis for believing that the labeling is false and misleading" under §352(a).[17]

Whether the defendants intended Mr. Miyagi to be used as a drug is a matter for the jury to decide. However, the indictment sufficiently alleges the factual elements and statutory elements to place the defendants on notice.

### E.   **AM-2201 Should not be Considered as a "New Drug" under the FDCA for Purposes of Circumventing the Misbranding Prohibitions**

The defendants contend for the first time in their reply brief that, if AM-2201 is a drug under the FDCA, then it is "new drug" as defined in §321(p) because it has never been submitted to the FDA through a New Drug Application.

---

[16]    *United States v. Storage Spaces Designated Nos. "8" and "49",* 777 F.2d at 1366 n. 5.

[17]    *Id.,* at *1367.*

They further contend that, as a "new drug" the intent of the vendor becomes irrelevant as the statute is tied to the labeling itself.  If the label instructions are followed, specifically, "warning: not for human consumption," then AM-2201 cannot  "affect the structure or any function of the body of man" which would render the misbranding statute inapplicable.

This circular argument, if accepted, would allow intentionally created false and misleading labels to be used to circumvent the misbranding prohibitions in the statute completely. Further, the defendants' proposed interpretation ignores the definition of drug contained in §321(g)(1)(D) such that it is rendered meaningless, an interpretation this Court is not prepare to accept.

If AM-2201 is manufactured and sold with the intent that it would be purchased and ingested by smoking in order to get the purchaser high, a false label does not change that intent and the same statute contemplates as much in §321(n) which provides:

> If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there **shall** be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, *but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates* under the conditions of use

prescribed in the labeling or advertising thereof or *under such conditions of use as are customary or usual*. (Emphasis added)

In addition, Title 21 of the Code of Federal Regulations deals with food and drugs. Part 201 deals with labeling. "New Drugs" are provided certain exemptions in §201.115, however, the regulation provides "No exemption shall apply to any drug which would be a new drug if its labeling bore representations for its **intended uses**." (Emphasis added) Looking to the definition of intended uses as provided in this regulation, 21 C.F.R. §201.128 provides:

> The words intended uses or words of similar import in §§ 201.5, **201.115**, 201.117, 201.119, 201.120, and 201.122 refer to the objective intent of the persons legally responsible for the labeling of drugs. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. It may be shown by the circumstances that the article is, with the knowledge of such persons or their representatives, offered and used for a purpose for which it is neither labeled nor advertised. The intended uses of an article may change after it has been introduced into interstate commerce by its manufacturer. If, for example, a packer, distributor, or seller intends an article for different uses than those intended by the person from whom he received the drug, such packer, distributor, or seller is required to supply adequate labeling in accordance with the new intended uses. **But if a manufacturer knows, or has knowledge of facts that would give him notice, that a drug introduced into interstate commerce by him is to be used for conditions, purposes, or uses other than the ones for which he offers it, he is required to provide adequate labeling for such a drug which accords with**

-16-

**such other uses to which the article is to be put.** (Emphasis added)

This argument, improperly raised for the first time in reply brief, is without merit.

## F.    The Statute, as Applied, is not Unconstitutionally Vague

This argument, also improperly raised for the first time in a reply brief, is likewise without merit. The government's argument is not that novel. The *Storage Spaces* case cited herein was decided in 1985. The intent of the vendor as a critical element has been recognized by other circuits as well."[18] Since February of 1976, 21 C.F.R. §201.128 pertaining to labeling obligations has been a part of the law.

In *United States v. Travia*, 180 F.Supp.2d 115 (DC 2001) the defendants were charged with violations under §§331(a) and (f) of the FDCA for selling balloons filled with nitrous oxide (laughing gas) at a rock concert. At issue was whether nitrous oxide was a drug since the balloons had no labels. The intent of the defendants was found sufficient to classify nitrous oxide as a drug under §321(g)(1)(C). The defendants then challenged the FDCA on vagueness grounds. This Court agrees with the analysis of the district court who stated:

The FDCA prohibits the introduction into interstate commerce of

---

[18]    *National Nutritional Foods Assoc. v. Matthews,* 557 F.2d at 333; *Rutherford  v. United States*, 542 F.2d 1137, 1140 (10th Cir. 1976); *Brown & Williamson Tobacco Corp. v. Food & Drug Administration*, 153 F.3d 155, 163 (4th Cir. 1998).

misbranded drugs. 21 U.S.C. § 331(a). Drugs are misbranded if they fail to bear adequate directions and warnings, *id*. § 352(f), . . . The statute then states that "[a]ny person who violates a provision of section 331 of this title shall be imprisoned for not more than one year or fined not more than $1,000, or both." *Id*. § 333(a). And it defines the term "person" to mean an "individual." *Id*. § 321(e). Congress has provided sufficient notice through these provisions; they are not so vague or standardless that the ordinary public is left uncertain as to what is prohibited. *City of Chicago*, 527 U.S. at 56, 119 S.Ct. 1849; cf., e.g., *United States v. Sullivan*, 332 U.S. 689, 695, 68 S.Ct. 331, 92 L.Ed. 297 (1948) (finding no ambiguity in the misbranding language of the Act and accordingly upholding provision requiring adequate directions for use and adequate warning against use); *United States v. Forester*, 346 F.2d 685, 685 (4th Cir.1965) (per curiam) (upholding provision deeming prescription drug to be misbranded if not dispensed pursuant to a prescription); *United States v. General Nutrition, Inc*., 638 F.Supp. 556, 564 (W.D.N.Y.1986) (upholding provision requiring adequate directions for use and adequate warnings and noting unawareness of any case invalidating any provision of the FDCA "in any circumstance"). The Court therefore concludes that the FDCA is sufficiently clear to pass constitutional muster.

*Id.,* at 123.

As this issue was raised for the first time in the reply brief, the undersigned would typically allow the government an opportunity to respond. However, given the notice provided in the statue, the regulations, and the extensive jurisprudence finding the FDCA is not unconstitutionally vague, no response is necessary. However, the district court should be advised the government has had no opportunity to respond to the constitutional argument made by the defendants.

-18-

### *Conclusions and Recommendation*

For the reasons set out above, the undersigned concludes that the allegations in count two of the indictment sufficiently enumerate the elements of the offense and provide sufficient citations to the law to place the defendants on notice of the charges against them and to assert double jeopardy as a defense against any future prosecutions.  The undersigned further concludes that the FDCA is not unconstitutionally vague as applied.

Therefore, it is the recommendation of the undersigned that the Motion to Dismiss Count Two of the Superceding Indictment [Docs. 297], which has been adopted by Defendants Reece (01)[Doc. 312, 332], Stanford (08)[Doc. 337, 346], Francis (09) [Doc. 388,401] and Domingue (10)[Doc. 362, 379] should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b)(2), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

fourteen days following the date of its service, or on a date set by the district court, shall act to waive the party's right to review by the district court. Fed. R. Cr. P. 59(b)(2).

Signed at Lafayette, Louisiana this 15th day of May, 2013.

_____
Patrick J. Hanna
United States Magistrate Judge

-20-